## UNITED STATES v. CHAN NOM GEE.
### No. 8187.

District Court, W. D. Washington, S. D.
March 6, 1931.

Anthony Savage, U. S. Dist. Atty., of Seattle, Wash., and John T. McCutcheon, Asst. U. S. Dist. Atty., of Tacoma, Wash.

Hugh C. Todd, of Seattle, Wash., for defendant.

CUSHMAN, District Judge (after stating the facts as above).

It has been contended that because of the right of appeal from the judgment of Judge Neterer that this proceeding is unauthorized. In the opinion of Judge Neterer (part of Defendant's Exhibit 1) he states:

"The commissioner did not have jurisdiction of the defendant, and the proceeding must be dismissed. This does not preclude deportation proceedings properly initiated. * * * *"

Therefore appellant's contention now made is groundless.

But one other question argued upon the appeal will be considered. The appellant is twenty-seven years old. He was taken into custody or arrested by Inspector Voligny, and later questioned by Immigration Inspector Sanderson, after which the complaint for his deportation was filed with United States Commissioner Bowman.

A transcript of the examination of appellant by Inspector Sanderson was admitted upon the trial had in this court. Upon the part of appellant it is contended that statements made by the defendant in response to questions directed to him by the immigration inspector at a time when the defendant was under illegal arrest cannot lawfully be considered. Objection has been made throughout the proceedings before the commissioner and before this court to the consideration of such statements.

If the statements made to the inspector upon such examination are admissible, they show the appellant to be a full-blooded Chinese person born in China. If such be the fact, appellant has not maintained the burden that the law puts upon him of establishing his right to be in the United States.

The question therefore for consideration is whether evidence as to the statements so made by the appellant is admissible. The

exhibit referred to, and admitted in evidence, recites:

"Inspector Sanderson to subject: You are advised that I am a United States Immigrant inspector and as such have authority to take testimony concerning the right of aliens to be in the United States. Are you willing to give me a personal history of yourself which may be used in future proceedings for or against you?

"A. Yes. * * *"

In view of the foregoing and the examination as a whole, there is nothing to indicate that the statements made by the appellant to the inspector upon such examination were other than voluntary. There has been no contention made on behalf of appellant that he is an American citizen or that he was born in the United States. He did not testify in this case and the court has had no view of his person.

The appellant relies upon the dissenting opinion of Judge Anderson in Charley Hee v. United States (C. C. A.) 19 F.(2d) 335, 338, and the fact that the case was reversed by the Supreme Court of the United States (Charley Hee v. United States, 276 U. S. 638, 48 S. Ct. 300, 72 L. Ed. 745), from which it is argued that the Supreme Court approves the reasons given by Judge Anderson for his dissent. Such deduction is unwarranted, for the case was reversed and remanded upon stipulation of counsel on motion of the Solicitor General. It likewise is to be noted that in that case there was credible evidence that the defendant had been in Boston twenty-two or twenty-three years. "It follows that he had been, for years, daily, available for proper inquiry by the Chinese inspectors relative to his right to be and remain in the United States. But on Saturday afternoon" he was arrested and the examination of which complaint was made immediately had. It was also shown that he registered for the draft in 1918; that he claimed to be a native-born citizen of the United States and that he contended upon the trial in the District Court that the answers given by him upon the examination by the inspector were made while the defendant was scared; that he was afraid; that he was "upset and kind of dizzy." No such contention was made in this case.

In the present proceeding the statements made in answer to the inspector's questions were admissible in evidence. Low Wah Suey v. Backus, 225 U. S. 460, 469–470, 32 S. Ct. 734, 56 L. Ed. 1165; Ng Kai Ben v. Weedin (C. C. A.) 44 F.(2d) 315; Ex parte Keizo

Kamiyama (C. C. A.) 44 F.(2d) 503; Ex part Ematsu Kishimoto (C. C. A.) 32 F.(2d) 991; Chan Wong v. Nagle (C. C. A.) 17 F.(2d) 987; Seif v. Nagle (C. C. A.) 14 F.(2d) 416; Mok Nuey Tau v. White (C. C. A.) 244 F. 742; Ah Lin v. United States (C. C. A.) 20 F.(2d) 107; United States v. Hung Chang (C. C. A.) 134 F. 19; Bak Kun v. United States (C. C. A.) 195 F. 53; Toy Dip v. United States (C. C. A.) 198 F. 603; Guiney v. Bonham (C. C. A.) 261 F. 582, 8 A. L. R. 1282; Ex part Ah Sue (D. C.) 270 F. 356; Ex parte Cahan (D. C.) 42 F.(2d) 664.

Many of the above-cited cases were habeas corpus proceedings brought following executive orders of deportation. While it is true that executive hearings for deportation are more summary in their nature than judicial proceedings and that in some respects there may be lawfully considered on such executive hearings evidence that would not be admitted in a judicial proceeding, yet in so far as the admissibility of evidence depends upon whether the statement of the party defendant is voluntary, there is no such distinction.

It will be further noted that the appellant, in so far as any right of his to be or remain in the United States is concerned, other than stated above, remained mute.

In Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221, a case in some respects analogous, in which the deportation of an alien, not Chinese, was ordered and it was contended by such alien that his statement that he was an alien was inadmissible because made while he was in custody, the Supreme Court said (at page 153 of 263 U. S., 44 S. Ct. 54, 56):

"It is true that alienage is a jurisdictional fact; and that an order of deportation must be predicated upon a finding of that fact. United States v. Sing Tuck, 194 U. S. 161, 167, 24 S. Ct. 621, 48 L. Ed. 917. It is true that the burden of proving alienage rests upon the government. For the statutory provision which puts upon the person arrested in deportation proceedings the burden of establishing his right to remain in this country applies only to persons of the Chinese race. See Ng Fung Ho v. White, supra, 259 U. S. 283, 42 S. Ct. 492, 66 L. Ed. 938. Compare Immigration Rules of May 1, 1917, rule 8. It is also true that, if the Department makes a finding of an essential fact which is unsupported by evidence, the court may intervene by the writ of habeas corpus. Zakonaite v. Wolf, 226 U. S. 272, 274, 275, 33 S. Ct. 31, 57

L. Ed. 218. But it is not true that, if the report of Bilokumsky's examination be eliminated there was no evidence of alienage at the hearing. Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character. Runkle v. Burnham, 153 U. S. 216, 225, 14 S. Ct. 837, 38 L. Ed. 694; Kirby v. Tallmadge, 160 U. S. 379, 383, 16 S. Ct. 349, 40 L. Ed. 463. Compare Quock Ting v. United States, 140 U. S. 417, 420, 11 S. Ct. 733, 851, 35 L. Ed. 501. Bilokumsky was present at the hearing, personally and by counsel. The ground for deportation involved a charge of acts which might have been made the basis of a serious criminal prosecution. Criminal Code, § 6 (Comp. St. § 10,170). If Bilokumsky was a citizen, inquiry into the facts was immaterial; and the whole proceeding must have fallen. He, presumably, knew whether or not he was a citizen. Since alienage is not an element of the crime of sedition, testifying concerning his status could not have had a tendency to incriminate him. There was strong reason why he should have asserted citizenship, if there was any basis in fact for such a contention. Under these circumstances his failure to claim that he was a citizen and his refusal to testify on this subject had a tendency to prove that he was an alien.

"Conduct is often capable of several interpretations; and caution should be exercised in drawing inferences from it. But there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak. Deportation proceedings are civil in their nature. Fong Yue Ting v. United States, 149 U. S. 698, 730, 13 S. Ct. 1016, 37 L. Ed. 905; Bugajewitz v. Adams, 228 U. S. 585, 591, 33 S. Ct. 607, 57 L. Ed. 978. Neither statute nor rule requires that matter alleged in the warrant of arrest shall, in the absence of an express admission, be taken to be denied. A person arrested on the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute. It is not unreasonable to assume that one who may wish to challenge the executive's jurisdiction in the courts will not refrain from asserting in the proceedings before the executive the facts on which he relies. To defeat deportation it is not always enough for the person arrested to stand mute at the hearing and put the government upon its proof. Compare United States v. Sing Tuck, 194 U. S. 161, 169, 24 S. Ct. 621, 48 L. Ed. 917. Since the proceeding was not a criminal one, Bilokumsky might have been compelled by legal process to testify whether or not he was an alien. The government was not obliged to adopt that course."

The order and decree of the court will be that the appellant be deported to China, the port in China to be determined upon the settling of the decree; that the attorneys to this cause will be heard on Saturday, March 14, 1931, at 10 o'clock in the forenoon in the above-entitled court, as to the proper form of order to be made regarding the time and place and to whom the appellant shall surrender himself in order that such deportation may be made.

The decree will be settled upon notice, and the clerk will notify by mail the attorneys for the parties hereto and the New Amsterdam Casualty Company, the surety upon the recognizance and bail bond of the appellant, of this ruling.